UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

MOTHANA MAHER HUSSEIN,

                Plaintiff,

        v.

OCCUPANT OF THE OFFICE OF CEO &
CFO OF BANK OF AMERICA,
NATIONAL ASSOCIATION,

              Defendant.

--------------------------------------------------------x

**MEMORANDUM AND ORDER**
24-CV-4477 (RPK) (MMH)

RACHEL P. KOVNER, United States District Judge:

    *Pro se* plaintiff Mothana Maher Hussein filed this lawsuit against "Occupant of the Office of CEO & CFO of Bank of America, National Association" ("Bank of America"). *See* Am. Compl. 1 (ECF pagination) (Dkt. #22). Defendant has moved to dismiss the case under Rule 8(a) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Mot. to Dismiss (Dkt. #23). Plaintiff has sought leave to file a second amended complaint that contains similar claims. *See* 2nd Mot. to Amend (Dkt. #33). For the reasons that follow, defendant's motion to dismiss the first amended complaint is granted. Plaintiff's motion for leave to file his proposed second amended complaint is denied, and the complaint is dismissed with prejudice, because the proposed amendments would be futile.

## BACKGROUND

    Plaintiff alleges that on January 18, 2024, he acted as a "Consumer and Attorney-in-Fact" for a "Principal Account" and "entered into an assignment agreement with" Bank of America. Am. Compl. 2. Plaintiff alleges the agreement "assigned all rights, titles, and interest in the payment of $2,047,257.41 from the Principal Trust Account." *Ibid.*; *see* Compl. 69 (ECF

1

pagination) (attaching an "Assignment Agreement" signed by only plaintiff) (Dkt. #1).  He alleges that defendant "agreed to act as a fiduciary by managing and disbursing these funds," but that it "falsely claimed the amount involved was only $640,000."  Am. Compl. 2.

Plaintiff alleges that on March 6, 2024, he "issued a Bill of Exchange for the amount of $2,047,257.41," naming Bank of America as "Account Trustee," the U.S. Treasury as "Trustee for Principal," and himself as "Payee." *Ibid.*  Plaintiff alleges the "U.S. Treasury stamped the Bill of Exchange," which transformed defendant's role "from a mere custodian of funds to that of a trustee." *Ibid.*  Plaintiff alleges that defendant "violated its fiduciary duties" by refusing to open the account. *Id.* at 2–3.  Finally, plaintiff alleges that on September 10, 2024, he "presented a Bill of Exchange, which had previously been stamped and accepted by the U.S. Treasury, to a representative of Bank of America for processing." *Id.* at 3.  Defendant "refused to accept or process the Bill of Exchange." *Ibid.*

Plaintiff brings claims for conversion; violation of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 *et seq.*; unjust enrichment; breach of fiduciary duty; violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*; and unlawful withholding of funds. *Id.* at 3–14.  Plaintiff seeks damages and equitable relief. *Id.* at 14–15.  Defendant has moved to dismiss. *See* Mot. to Dismiss.

Plaintiff subsequently filed a motion seeking leave to file a second amended complaint. *See* 2nd Mot. to Amend.  The proposed second amended complaint changes the named defendant to "Bank of America, National Association" and alleges that defendant further violated the ECOA by failing to give plaintiff proper notice when it reviewed his file and by misclassifying him as a non-consumer. *Id.* at 15–16 (ECF pagination).  It also added a new claim under the Truth in Lending Act ("TILA"), alleging that Bank of America failed to provide plaintiff a timely loan

estimate. *Id.* at 17.  The proposed second amended complaint seeks damages in addition to declaratory and equitable relief. *Id.* at 16–17.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted."  To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The facial "plausibility standard is not akin to a probability requirement," but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (quoting *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).  In contrast, a complaint fails to state a plausible claim when, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or when, as a matter of fact, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," *Iqbal*, 556 U.S. at 679.  Though the court must accept all facts alleged in the complaint as true, it need not adopt "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements." *Id.* at 678.

At the motion-to-dismiss stage, a court may consider only (i) the complaint itself, (ii) documents either attached to the complaint or incorporated in it by reference, (iii) documents the plaintiff relied on and knew of when bringing suit, and (iv) matters in the public record that are subject to judicial notice.  *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999).

When a plaintiff proceeds *pro se*, his complaint must be "liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## DISCUSSION

Defendant's motion to dismiss the first amended complaint is granted, because plaintiff has failed to state a claim. Plaintiff's motion for leave to file his proposed second amended complaint is denied, and the complaint is dismissed with prejudice, because plaintiff's proposed amendments would be futile.

As an initial matter, the CEO and CFO of Bank of America are inappropriate defendants in this case because the amended complaint does not allege any improper action by either party. *See generally* Am. Compl. Plaintiff later clarified that "Occupant of the Office of CEO & CFO" is "a formalistic placeholder" and that Bank of America is the "responsible party." Resp. to Mot. to Dismiss 1–2 (Dkt. #24). Plaintiff's proposed second amended complaint sought to remedy this error by changing the named defendant from "Occupant of the Office of CEO & CFO of Bank of America" to "Bank of America, National Association." *See* 2nd Mot. to Amend. Even if plaintiff pleaded his claims against the bank, however, his claims would still be subject to dismissal.

### I.    Conversion, Unjust Enrichment, and Unlawful Withholding of Funds

Plaintiff's claims for conversion, unjust enrichment, and unlawful withholding of funds fail because plaintiff does not plausibly allege that he owns the funds at issue or that Bank of America controls his funds.

4

Under New York law, each of these claims requires a plausible allegation that defendant interfered with plaintiff's property or was enriched at plaintiff's expense. To state a claim for conversion, plaintiff must allege that (1) he possessed "legal ownership or an immediate superior right of possession to a specific identifiable thing," and (2) "the defendant exercised an unauthorized dominion over" that thing "to the exclusion of the plaintiff's rights." *Estate of Giustino v. Estate of DelPizzo*, 21 A.D.3d 523, 524 (2d Dep't 2005) (citation omitted). To plead unjust enrichment, plaintiff must plead that "the other party was enriched, at plaintiff's expense, and that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v. Ralph Rieder*, 86 A.D.3d 406, 408 (1st Dep't 2011) (alterations adopted and citation omitted). Plaintiff's claims for unlawful withholding of funds appear to be a species of unlawful-enrichment claim. *See* Am. Compl. 13 (framing unlawful withholding of funds as "constitut[ing] unjust enrichment").

Plaintiff fails to state a claim under any of these theories. Although plaintiff generally alleges that Bank of America denied him access to a $2,047,257.41 fund, *id.* at 2–3, plaintiff does not plausibly allege that he owned this money or placed it under the bank's control. Plaintiff claims that in January 2024 he "entered into an assignment agreement" with Bank of America, and that as part of this agreement he "assigned all rights, titles, and interest in the payment of $2,047,257.41" to the bank. *Id.* at 2. Plaintiff maintains that the bank "agreed to act as a fiduciary by managing and disbursing these funds." *Ibid.* In March 2024—about two months after the supposed "assignment agreement"—plaintiff alleges that he "issued a Bill of Exchange for the amount of $2,047,257.41 in connection with the purchase of property." *Ibid.* This Bill allegedly involved three parties: Bank of America as "Account Trustee," the U.S. Treasury as "Trustee for Principal," and plaintiff as "Payee." *Ibid.*

5

In connection with these allegations, plaintiff filed a copy of an "Assignment Agreement" stating that Bank of America "agrees to provide immediate funds" to plaintiff in exchange for plaintiff conveying "all rights, title, and interest in" a "Principal Trust Account" holding $2,047,257.41. Compl. 69. But this document does not contain any suggestion whatsoever that the bank consented to the terms of the alleged agreement—a bank representative did not sign the document, and the document is not on the bank's letterhead. *See ibid.* Nor does the document provide any indication that plaintiff tendered over $2 million to the bank in January 2024. And plaintiff does not provide any other facts supporting his conclusion that "Defendant exercised unauthorized control over Plaintiff's property by holding and refusing to release the funds rightfully belonging to Plaintiff." Am. Compl. 3.

To the contrary, plaintiff's own pleadings render implausible his allegations regarding the $2,047,257.41 purportedly entrusted to the bank. Plaintiff attached a letter to his original complaint and his proposed second amended complaint showing that he applied for a "pre-application" loan of $640,000 *from* Bank of America in early 2024. Compl. 75; 2nd Mot. to Amend 3. No money changed hands because plaintiff did not file a formal loan application; instead, the bank invited plaintiff to call his "assigned loan specialist" if he wished to borrow the money. Compl. 75; 2nd Mot. to Amend 3. Plaintiff declined—he was not pleased with "the extension of credit received," so he filed an internal complaint with Bank of America in which he noted that he had "determined the value to be two million forty-seven thousand two hundred fifty-seven United States dollars and forty-one cents." Compl. 78. Plaintiff did not explain how he arrived at this figure, but the context of the complaint makes clear that it was calculated in response to the bank's decision to potentially extend him $640,000 in *credit*—the opposite of a deposit. *See ibid.* Plaintiff further linked this potential line of credit to his conversion claim in his amended

6

complaint, stating that the bank "falsely claimed the amount involved as only $640,000," when the "full" amount was $2,047,257.41.  Am. Compl. 2.  But plaintiff's own filings show that the $640,000 figure represented a potential loan from the bank to plaintiff—not the other way around.

In sum, the complaint does not adequately allege that plaintiff owned the $2,047,257.41 in question, or that the bank borrowed or exerted control over this money.  Plaintiffs' pleadings do not establish even "a sheer possibility that a defendant has acted unlawfully," let alone that defendant has "plausibly" done so.  *Iqbal*, 556 U.S. at 678–79.

## II.    Breach of Fiduciary Duty

Plaintiff fails to state a claim for breach of fiduciary duty.  To state a claim for breach of fiduciary duty, plaintiff must allege "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct.'"  *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 206 (S.D.N.Y. 2014) (quoting *Varveris v. Zacharakos,* 973 N.Y.S.2d 774, 775 (2013)).  "A fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."  *Roni LLC v. Arfa,* 963 N.E.2d 123, 124 (N.Y. 2011) (citation omitted).  "The core of a fiduciary relationship is a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions."  *Faith Assembly v. Titledge of N.Y. Abstract, LLC,* 961 N.Y.S.2d 542, 553 (2013) (citation omitted).  Thus, "there is no general fiduciary duty inherent in an ordinary broker/customer relationship."  *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.,* 157 F.3d 933, 940 (2d Cir.1998) (citing *Perl v. Smith Barney Inc.*, 646 N.Y.S.2d 678, 680 (1st Dep't 1996)).  In assessing the relationship between parties, "where parties have entered into a contract, courts look to that agreement to discover the nexus of the parties' relationship and the particular

7

contractual expression establishing the parties' interdependency." *EBC I, Inc. v. Goldman, Sachs & Co.*, 832 N.E.2d 26, 31 (N.Y. 2005) (alterations adopted and citation omitted).

Plaintiff does not plausibly allege a fiduciary relationship with Bank of America or the top officers he names as defendants. He alleges that he entered an agreement with defendant, but the agreement he attaches to the complaint does not clarify the "nexus of the parties' relationship." *Ibid.*; *see* Compl. 69. And plaintiff's allegation that the "U.S. Treasury" transformed the bank "from a mere custodian of funds to that of a trustee" by stamping the Bill of Exchange is not plausible, as he does not explain why a stamp by the U.S. Treasury would impose a fiduciary duty. Am. Compl. 2. Plaintiff does not otherwise plead facts establishing that Bank of America entered an agreement creating "a duty to act for or to give advice for the benefit of" plaintiff. *Roni LLC*, 963 N.E.2d at 124 (citation omitted). Thus, plaintiff's allegation that Bank of America "agreed to act as a fiduciary by managing and disbursing . . . fundings, establishing a fiduciary duty to act in the best interests of Plaintiff," is conclusory. Am. Compl. 2. And plaintiff's reliance on New York General Obligations Law § 5-1505, which imposes duties on an "agent acting under a power of attorney," is inapposite because he does not allege any facts indicating the creation of a power of attorney. N.Y. General Obligations Law § 5-1510; *see id.* § 5-1501B (explaining the requirements to create a valid power of attorney); Resp. to Mot. to Dismiss 7. Plaintiff thus fails to state a claim for breach of fiduciary duty.

### III.    Equal Credit Opportunity Act

Under the ECOA, it is "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction[] (1) on the basis of race, color, religion, national origin, sex or marital status, or age . . .; (2) because all or part of the applicant's income derives from any public assistance program; or (3) because the applicant has in good faith exercised any

right under this chapter." 15 U.S.C. § 1691(a). Plaintiff fails to adequately plead the elements of an ECOA claim because he does not allege any actionable discriminatory conduct. Plaintiff alleges that the bank "refus[ed] to provide access to [his] account" and "process the Bill of Exchange," Am. Compl. 4, but does not set forth any facts suggesting that this refusal was based on any attribute or activity protected under the ECOA. Although plaintiff asserts that Bank of America "discriminated against Plaintiff based on unlawful factors in violation of ECOA," *ibid.*, this statement is conclusory and fails to state a claim.

### IV.    Fair Debt Collection Practices Act

Plaintiff fails to state a claim under the FDCPA. The FDCPA prohibits debt collectors from using false, deceptive, or misleading representations in connection with the collection of any debt. *See* 15 U.S.C. § 1692e. To plead an FDCPA violation, plaintiff must allege that (1) he is a "'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt," (2) "the defendant collecting the debt is considered a 'debt collector,'" and (3) "the defendant has engaged in any act or omission in violation of FDCPA requirements." *Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015) (quoting *Plummer v. Atl. Credit & Fin., Inc.*, 66 F.Supp.3d 484, 488 (S.D.N.Y.2014)).

Plaintiff has not plausibly alleged that he is a consumer who owes a debt or that Bank of America (or the bank officials he sued) is a debt collector. He does not, for example, allege that he borrowed money from Bank of America. To the contrary, plaintiff appears to allege that he is a creditor who "assigned" $2,047,257.41 to the bank. Am. Compl. 2. Plaintiff thus fails to state a claim under the FDCPA.

### V.    Proposed Second Amended Complaint and Leave to Amend

Plaintiff is denied leave to file his proposed second amended complaint, and the complaint is dismissed with prejudice, because the amendments that plaintiff proposes would be futile.

Plaintiff's proposed amendments elaborate on his ECOA claim, but the proposed ECOA claims in the revised complaint would fail for the same reasons stated above.  The proposed second amended complaint alleges that plaintiff's account was misclassified and that plaintiff lacked notice that his file was being reviewed.  *See* 2nd Mot. to Amend. 15–16.   But plaintiff does not set forth facts suggesting that these alleged deficiencies were based on any attribute or activity protected under the ECOA.  *See ibid.*   The complaint therefore does not allege any actionable discriminatory conduct.

Plaintiff's proposed amended complaint also adds a TILA claim, but it fails to state a claim under the TILA.  The TILA "impos[es] mandatory disclosure requirements on those who extend credit to consumers in the American market."  *Strubel v. Comenity Bank*, 842 F.3d 181, 186 (2d Cir. 2016) (quoting *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 363 (1973)).  Even assuming Bank of America is a creditor within the meaning of TILA, plaintiff's claim fails because he does not allege that defendant failed to comply with a "mandatory disclosure requirement[]" or any other requirement in the TILA.  *Ibid.* (quoting *Mourning*, 411 U.S. at 363).  Accordingly, the proposed amendments would be futile.

Leave to amend further is denied.  While "[o]rdinarily," a court "should not dismiss a *pro se* plaintiff's claim without granting leave to amend when a liberal reading of the complaint gives any indication that a valid claim might be stated," dismissal with prejudice is appropriate when "amendment would be futile" because "there is no indication that [the plaintiff] might plead a valid claim."  *Hariprasad v. New York*, 722 F. App'x 102, 103 (2d Cir. 2018) (citation omitted).  Here,

plaintiff has filed three versions of his complaint with the court—the most recent after the motion to dismiss was filed—and none gives any indication that a valid claim could be stated through further amendment.  Accordingly, further leave to amend is denied.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is granted, and plaintiff's motion for leave to file his proposed amended complaint is denied.  The complaint is dismissed with prejudice because a liberal reading of plaintiff's filings does not give any indication that a valid claim could be stated in an amended complaint.  The Clerk of Court is respectfully directed to enter judgment, close the case, and mail a copy of this order to plaintiff.

SO ORDERED.

_/s/  Rachel Kovner_____
RACHEL P. KOVNER
United States District Judge

Dated:  September 30, 2025
   Brooklyn, New York